Mr. Ding, for the amicus curiae, Ms. Yoon, for the appellee. Good morning. May it please the Court, my name is Yong Go Ding, and I'm amicus on behalf of the appellant, Mr. Brien Hill. I would like to reserve two minutes for rebuttal. The appeal raises numerous issues, and I'm going to focus on two. Specifically, the district court erred in granting summary judgment to the school, first, on the reasonable accommodation claim for a classroom aide, and second, on the hostile work environment claim. On the classroom aide claim, the district court erred because a reasonable jury could find that having a classroom aide would have effectively addressed Mr. Hill's limitation withstanding for long periods of time by allowing him to sit down more often while still teaching and instructing his class. Here's what the law says. The ADA protects a qualified individual, meaning someone who has a disability, but who can still perform the essential job duties, even without reasonable accommodation. So, does the aide have to be associated with non-core functions? Yes, and the way essential job duties is defined is that the ADA regulations point to several factors. A couple of the important factors include what are other employees in the same position as well as what's the employer's written job description say, and here, all of the other program aides, and Mr. Hill's a program aide, but all of the other program aides each have at least one classroom aide, which means it can't be said that teaching alone without the help of a classroom aide is an essential job duty. What Judge Bates obviously was focused on this and asked for additional briefing or evidence on this, I guess evidence on this question, and then it came back and he just wasn't convinced that there'd been a connection between being on the first floor and still needing an aide would do anything in terms of the disability. So, answer that conundrum, because a lot of this was about the third floor rather than the first floor. It wasn't as focused as much on the first floor, and Judge Bates asked for evidence on that and then found that it still wasn't sufficient. Right. I think the district court was wrong, because based on the record, a reasonable jury could find this connection between having a classroom aide and... Well, this court hasn't spoken on the legal question, so I was trying to understand what Judge Bates was focusing on, and in his opinion in Edwards, he states the question as whether the requested accommodation would be an effective means of responding to the plaintiff's disability. So, to the extent that the plaintiff said he could do the core functions, and as Judge Kavanaugh was just pointing out, the main focus was he was on the third floor and needed to be on the first floor. So, do you accept Judge Bates's definition of what you need to show in terms of what I just read you, an effective means of responding to the disability? In other words, the fact that everybody else has it may be, I don't know, interesting, but is it an ADA relevant consideration when at least the district court admittedly in the Supreme Court in U.S. Airways v. Barnett, and the citation is 535 U.S. 391, held that the term accommodation conveys the need for effectiveness, and the district court, I think, correctly explained the law that accommodation, by definition, has to effectively address the limitations imposed by the disability. So, that's on the legal side, and coming back to your question regarding what the record shows, the record's clear that it's undisputed Mr. Hill's a single-leg amputee. He wears a prosthetic leg, and he injured his stump in May of 2007. I'm aware of all that, and that's obviously key to the case, but on the first floor, if he's teaching, why does the aid help in any way with the disability? Presumably you're standing for a while, and you can teach while sitting, too, I assume, although that's not really explored in the record, which is one of the holes that I saw. Sure. So, I'll just quickly explain what the limitation was, what the classroom looked like, and then what the connection was between the classroom aid and the limitation. So, in supplemental briefing, and that's on page 422 of our appendix, Mr. Hill explained that his physical limitation due to his disability was standing for long periods of time, quote,  He also explained in the same paragraph that he stood for long periods of time, quote, because, quote, he supervised his classroom alone, end quote. And he was working with young children. For example, in 2008, he was working with kids, 15 kids between the ages of 7 to 11. Yes, Mr. Hill doesn't say this, but a reasonable jury could infer that you can't teach kids if you're just sitting behind a class, especially because he had to personally interact with the kids. Well, we don't have much on that. I mean, there's not much in the record one way or another on that. That's potentially a key point. How much do you have to stand, and how much could you sit while teaching this particular class? What do we do? I know it wasn't raised below, as you point out, with the paragraph in the complaint that suggests that so long as he was moved to the first floor, that would suffice. I don't think Mr. Hill was admitting to not needing a class roommate. I think we have to take that partial phrase that's from paragraph 37 of the complaint in its full context. And in the context of even the full statement, Mr. Hill goes on to clarify that his disability, quote, did not prevent him from performing essential job duties, end quote. So in other words, he was just saying that even though he has this permanent stump that caused unpredictable spasms, he's still a qualified individual who can still perform his essential job duties. So the district court said he wasn't clear exactly what the essential job duties were and relied on the job description. So you're not challenging that, but did the job description go beyond classroom teaching? Because I thought on the third floor, part of the problem, he was up and down the steps because of recess and getting the kids in and out, et cetera. So there was more than sort of the academic role of teaching that was part of the core of his job. Is that correct? Right. He needed to be personally, well, the teacher in the room needed to be personally interacting with the kids. And if Mr. Hill had another classroom mate to help interact with these 15, 17, 11-year-olds, he would have been able to sit down more often while still performing his job duties as a program aide of instructing and interacting with the kids. Do we know how much time he thought he needed to be standing and how much he could be sitting while teaching the class? We don't know exactly. But on summary judgment, I think a reasonable jury drawing inferences most favorable to the non-moving party, Mr. Hill, a reasonable jury could easily find that when you're teaching 15 kids that are 7 to 11 years old, you couldn't be sitting all the time. Not all the time, right. So that's why I asked the question phrased as I did, which is, how much did he think he needed to be standing? How much could he be sitting? And I realize that's a technicality, and this is a pro se case, so I get all that. But I was just wondering if there was anything about that. Didn't Mr. Hill also introduce evidence that he needed the aide because he had to supervise the children on the playground and going to the restroom and other things of that nature? Correct. And if he had a classroom aide to help him with those activities as well, a reasonable jury could infer he would have been able to sit down more often and rest the stump that he injured in May of 2007. All right. Anything further? I'd like to reserve the rest of my time for rebuttal. Fine. Thank you. Thank you. All right. Thank you. May I please the Court? My name is Ji Young Yoo, representing Associates for Renewal and Education, or ARE. Appellant has brought three issues before this Court, but I'm only going to address in response to amicus the two issues, which are whether the district court has erred in granting summary judgment against Mr. Hill on the issue of hostile work environment and whether the district court erred in issuing granting summary judgment on his claim of his need for the reasonable accommodation with an aide. Could I ask you, do you agree or do you dispute that the core functions included not only the classroom teaching, but the supervision in the playground and escorting children to the restroom and that type of thing as well? The facts provided by both ARE and Mr. Hill does not really clarify what his core essential job functions are. However, it is unclear, yes. Well, as the non-moving party, he gets the benefit of all reasonable inferences, and when you look at the job description, which is what the district court did, are you disputing that? No, no, we're not disputing anything about his job descriptions. In regards to his hostile work environment, amicus has presented three-pronged argument before this Court. Those arguments are that ARE has created hostile work environment by failure to assign him from third floor to lower level facility and through ARE's retaliation against Mr. Hill with enhanced discipline for his assertion of his rights under ADA. And lastly, through ARE's failure to provide him with full-time aide as he requested. Appellant cannot argue reversal of district court's decision on the basis of third floor issue and the issue of retaliatory discipline or termination. The third floor issue has already been litigated to the court below, and the final judgment was entered in favor of Mr. Hill. And he was fully compensated for any damages related to that issue. A claim that had full and fair opportunity to litigate to the final judgment is precluded from being heard by the court again. Otherwise, it will violate the principle of res judicata, and it will also violate any compensation that arises from that second re-litigation will violate the violation of unjust remission. On the issue of retaliatory discipline and termination, that has also fully tried in court below on the merits to the final judgment. This time, it was against Mr. Hill. To allow Mr. Hill to re-litigate by assigning error to the court below for granting summary judgment on retaliatory discipline under new label of hostile work environment will again violate the principle of res judicata. So, therefore, out of three-prong argument amicus raised, two of the issue has been already fully litigated to final judgment, thus cannot be used to base the reversal of this district court's decision to dismiss hostile work environment. Can I go back to the reasonable accommodation claim? Yes. We said in Adams that walking is a major life activity. That was a case that was cited by the district court below. It would seem to follow from that that standing is a major life activity. Would you agree with that? Yes, I would agree with that. Okay. So, how do you explain or defend the district court's ruling that having an aide, that Mr. Hill had not shown that having an aide would address effectively the limitations imposed by his disability in having to stand for long periods of time? Mr. Hill, in his complaint, described his limitation as that he has a fear for hazard of pain and bruises due to prolonged standing. And the district court below did not have, in front of the court, did not have the facts that shows any sign of the hardship. In fact, for a 13-month period of time, the fact shows that he performed his job duties without suffering from any pains from prolonged standing, any bruises from prolonged standing. What's the evidence that he didn't have any pain? Excuse me, sir? What's the evidence that he did not have pain during that time? He did not provide any facts to the district court that he suffered any. He said he feared the pain or bruises. The mere hazard of pain or bruises is assertive. So him saying that he fears pain is an admission that he didn't have pain, that he was only fearing that he might have pain? Might have a pain or there's a possibility of bruise from walking or standing too long does not mean, I don't believe it means that he has actually suffered from any of those. The district court, on its own order, saw the connection, lacking the connection between the prolonged standing and why aid is an effective means to address his physical limitation, ordered Mr. Hill to provide supplemental facts or evidence to support his claim. And Mr. Hill did not provide any of those. Let's suppose we believe that reading the evidence in the light most favorable to Mr. Hill, that a reasonable jury could find that he would suffer pain or discomfort from having to stand a long period of time supervising and teaching. Then if that's the case, then why wouldn't an aid who could help with that supervision and that teaching, why wouldn't that have some sort of positive effect or impact on Mr. Hill's limitation? Even if the facts provided by Mr. Hill is taken in the most favorable way to Mr. Hill, even for the pro se person, he still has to meet the burden to prove why an aid is a reasonable accommodation. And by meaning of reasonable accommodation, he has to prove that an aid has to be an essential, most effective means to address his physical limitation. And physical limitation addressed to district court is that he has a fear of hazard from having pain or bruises from standing too long or walking too much. Wasn't there evidence about spasms? Yes, he said there is a potential unexpected spasm that he could experience. However, because he described it as unexpected spasm, it could happen anytime. It could happen while he's sitting in a chair watching TV at home, or it could happen while he's walking from the supermarket, or it could happen anytime. He did not connect those two dots of prolonged standing and essential mean to alleviate his pain or bruises. Nobody connected it to his physical condition. He did so, he said that because of his physical condition, he has all those potential risks. But he did not present it to the district court at the time of summary judgment that because of his duties, which requires him to walk in too long and requires him to stand too long, caused any of those. Therefore, before the district court, it did not have any facts to support his request for aid. And without having any evidence to support his claim that he needs one as a reasonable accommodation, I believe the district court did not urge in granting summary judgment against Mr. Hill. All right, thank you. Counsel for appellant, do you want to respond? I'll just make two arguments on rebuttal. As to the reasonable accommodation claim, I think actual pain is a red herring because the test of reasonable accommodation focuses on just the physical limitation imposed by one's disability. And he could walk and stand, correct? Yes. So the problem with standing, as I see it described by the district court, walking for long distances or standing for long periods of time. Correct. And that's why the question became, that I had before, I still have, which is, did this job require standing for long periods of time or could you stand? And since someone needed to go to the restroom, he could walk the person in the restroom, presumably because that's not going to be a long period of time or a long distance, so too for the playground. I guess I'm just about how much he needed to stand in this job. I can rely on common sense for it being a lot he would need to be on his feet, but there's nothing really describing that. Right. Mr. Hill doesn't exactly say exactly how much he had to walk or how long he had to stand. But, again, on summary judgment, I think the reasonable inference is supposed to be drawing favor of the non-moving party, Mr. Hill. That's true, although I guess the district court here really did bend over backwards by doing something that a lot of district courts wouldn't have done, which is to issue an order saying, here's one hole, please fill in this hole if there is anything. A lot of district judges would have just granted rather than doing that. What's your best reading of the record in response to Judge Kavanaugh's concern? In other words, what the jury had before it would be a man with a prosthetic leg who had to supervise about 15 children between 2 and 12 years old. He was both their academic teacher and their recreational supervisor. And what else is there? He had spasms now and then. He had fallen and damaged his prosthesis. So he's concerned about that. What else would have been before the jury on this record? Right. I think I would direct the court to pages 424, 425 of the MECAS appendix. And I'm pointing you to the supplemental briefing that Mr. Hill submitted in response to the district court's request. And he lists some of the activities that he had to do because he was supervising his classroom alone. So they included, for example, inspecting each student for loose clothing and laces, daily reviewing and enforcing in-class and outdoor rules of play, supervising students' outdoor play area to ensure it was free of puddles and slippery areas. And these are all tasks that, for all the other program aides, they had a classroom mate, at least one, to share these duties with. But we're back to what is the standard, the effective means of addressing the disability. So the argument, as I understand it, by Pelley is, you know, everything I said is true. But suppose, in fact, he could stand for 23 hours out of every 24 hours without a problem. So why does he need an aide to assist him because he can't stand too long when the school day is not 23 hours long? Isn't that what you have to push back against? And isn't that what the district court was looking for? Sorry, Your Honor, do you mind rephrasing that? In other words, hypothetically, if Mr. Hill could stand 23 hours out of 24 hours without any problem, then he has a classroom school assignment for eight hours of that day. Where is the evidence that having a classroom aide is in any way going to effectively address his inability to stand for every hour out of the day? I think under your hypothetical, it wouldn't because we're assuming that Mr. Hill could stand for 23 hours a day without a problem. That's the pushback where the defendant says, Mr. Hill hasn't told us. As I understand it, I don't want to put words in Judge Kavanaugh's mouth, but isn't that the concern here? Where is the evidence about how long he could stand or could not stand without difficulty? And the school's argument is, you know, just fear is not enough. You're right. He doesn't say exactly how many hours he could stand at once without sitting down. But in supplemental briefing on page three, he did clarify his disability substantially limited his ability to stand for long periods of time as required because he taught his classroom alone. And again, I think I come back to the summary judgment standard. Can I just make sure I have the ages of the students in his classroom correct? Yeah. So the program itself involves kids from ages 2 to 11 for the 2008 to 2009 school year, and that's part of the relevant period issue. He was working with kids from ages 7 to 11. So he didn't have 2 to 6-year-olds in that year? Correct. Okay. And that's on page 115 of the appendix, if you want. Okay. Thank you very much. We'll take the case under advisement. Okay. Thank you.
judges: Rogers, Kavanaugh, Wilkins